OPINION
{¶ 1} This appeal arises from the Lake County Court of Common Pleas wherein, appellant, Gregory J. Jones, ("Jones"), was charged with one count of attempted murder and one count of felonious assault.
 {¶ 2} On August 6, 2000, officers from the Madison Township Police Department responded to a report of a stabbing. Upon arriving at the home of Lawrence and Jackie Jones, the police were permitted entry by Lawrence Jones who directed them to the end of a center hallway where the victim, Gregory Gunn ("Gunn") was lying on the floor in front of Lawrence and Jackie's bedroom door. Gunn was conscious when the police arrived and identified appellant, Gregory Jones, the Jones' son, as the perpetrator. At the time of the incident, Gunn had been working as a handyman at the house and was living with the Jones's in a downstairs bedroom, directly next to a bedroom occupied by Gregory Jones.
 {¶ 3} After further investigation, the officers ascertained that Jones had attacked Gunn with a Samurai sword. The officers discovered the sword lying across a nearby bed with blood on the blade. The sword was confiscated for evidential purposes. The police also recovered a handgun at the scene, located in Lawrence Jones' bedroom, which was also gathered for evidential purposes. Three missing fingers from Gunn's left hand were recovered in the kitchen area. Gunn and the severed digits were transported to the hospital.
 {¶ 4} Gunn and Jones present differing factual accounts of the encounter. According to Gunn, in a statement issued to the Madison Township Police dated August 6, 2000, the date of the incident, he woke up about 4:00 a.m. and had to use the bathroom. The bathroom was upstairs in the main hallway. He walked up the stairs and went straight to the kitchen to get a drink of water. He heard a noise coming from his right. It sounded like it was coming from the pantry. He heard cabinets being bumped and pushed. He was curious about the sound and began to walk toward the pantry. As he approached, the light came on in the pantry where he saw Jones standing with a sword in his hands. Immediately Jones struck him with the sword and Gunn saw his fingers from his left hand get cut off and fall to the floor. Gunn indicated that he saw Jones do "some sort of dance," hopping back and forth from foot to foot while holding the sword. Gunn backed away, through the kitchen and down the hall. He claims that the entire time Jones was saying "I'm gonna kill you." Jones continued to move towards him. Gunn reached the end of the hall and Lawrence and Jackie Jones' bedroom door. Gunn attempted to open the door but could not because of the blood on his hands. Gunn then fell on his back in the hallway by the open door of the nearby computer room. Jones began swinging the sword on to Gunn as he lay on the floor.
 {¶ 5} Gunn sustained severe injuries including a large laceration to the bone extending from his left shoulder, through the stomach, to the groin area. Gunn was also missing three fingers and a fingertip from his left hand and his right heel had been sliced off. Gunn also had a severe laceration on his left arm which severed the elbow joint.
 {¶ 6} Lawrence Jones, appellant's father, then emerged from his bedroom and began scuffling with Jones to prevent him from stabbing Gunn further. Gunn claims Lawrence Jones took the sword away from Jones and walked away with it. Jones then went into the computer room and emerged with a handgun and held it in Gunn's face. Jones then laid the gun on Gunn's right side and shouted, "[h]e's got a gun." Lawrence Jones came back and retrieved the gun. Gunn's girlfriend then approached from downstairs and tended to his wounds. The police arrived shortly thereafter.
 {¶ 7} According to Jones' version of the events given during the presentence interview, he admitted that he had had "a dozen or so" beers that day and had used methamphetamines and was "probably high at the time." He had been at his mother's tattoo parlor on that day and then came home and cooked steaks outside with his family and Gunn at about 1:00 a.m. His memory of the events leading up to the attack was not clear. Jones stated that he thought Gunn had a gun in his hand when he came up from downstairs and that he was using the sword to defend himself. Jones stated that he was hearing voices maybe five or six months prior to the offense but was not sure if he had heard any voices on the day of the incident. Jones stated that at the time of the event he was not thinking of the consequences but "was thinking about my life and saving it."
 {¶ 8} Appellant was present at the scene and was taken into custody. He was subsequently indicted on one count of attempted murder and one count of felonious assault.
 {¶ 9} At his arraignment, appellant entered a plea of not guilty to the charges. He later amended his plea to not guilty by reason of insanity. Appellant subsequently elected to withdraw his not guilty and not guilty by reason of insanity pleas. On June 11, 2001, appellant appeared in court and entered written and oral pleas of no contest to the charges as set forth in the indictment. The court accepted the plea and found appellant guilty of both charges. The matter was referred to the Lake County Adult Probation Department for the preparation of the presentence investigation report, victim impact statement, and psychiatric evaluation.
 {¶ 10} A sentencing hearing was held on August 22, 2001. The felonious assault charge was merged with the attempted murder conviction for sentencing purposes, and appellant was sentenced to ten years imprisonment, the maximum term for the offense.
 {¶ 11} Appellant filed this appeal setting forth the following assignment of error:
 {¶ 12} "The trial court erred and abused its discretion by imposing the maximum sentence of incarceration on appellant herein."
 {¶ 13} Appellant pled no contest to one count of attempted murder and one count of felonious assault. The trial court merged the felonious assault charge with the attempted murder charge for sentencing purposes pursuant to R.C. 2941.25.[1] Attempted murder is a felony of the first degree for which the trial court sentenced appellant to the maximum prison term of ten years.[2] The offense of attempted murder is not subject to a mandatory prison term but, rather, subject to a presumption in favor of a prison term.[3]
 {¶ 14} A reviewing court must affirm the trial court's decision to impose a maximum sentence unless the reviewing court finds, by clear and convincing evidence, that the record does not support the trial court's sentence.[4]
 {¶ 15} In order to "`impose a maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C.2929.14(C).'"[5] When the trial court imposes a maximum sentence based on one of the criteria listed in R.C. 2929.14(C), it must give its reasons for imposing the maximum prison term.[6]
 {¶ 16} R.C. 2929.14(C) reads as follows:
 {¶ 17} "(C) Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
 {¶ 18} At the sentencing hearing, the trial court made the following findings regarding the imposition of the maximum prison sentence:
 {¶ 19} "And Mr. Jones I will tell you this: This will be the first time, first time in almost fifteen years that I have been here, that I have imposed the longest term. In so imposing the longest term, I find that this is the worst form of the offense and you pose the likelihood of committing future crimes and I will sentence you to ten years to the Lorain Correctional Institution which is subject to an appeal of the right of defense.
 {¶ 20} "Of course in so doing, the reasons for imposing the longest term are because the visceral attack was continuing and relentless on the victim and because the victim was permanently maimed. There is also a propensity for violence which is unabated at this point."
 {¶ 21} The trial court also made the following finding in its written judgment entry of sentence:
 {¶ 22} "The Court finds for the reasons stated on the record pursuant to R.C. 2929.14(C) that the Defendant has committed the worst form of the offense and the Defendant poses the greatest likelihood of recidivism."
 {¶ 23} Therefore, based on the foregoing, it is clear that the trial court made the requisite findings pursuant to R.C. 2929.14(C) both at the sentencing hearing and in the judgment entry of sentence.
 {¶ 24} The trial court had before it overwhelming evidence of the horrendous nature of the attack on Gunn. Photographs and medical records documented that Gunn lost three fingers on his left hand, sustained a deep laceration across his chest running from the shoulder to the groin, lost the heel of his right foot, and had severe damage to his elbow as a result of the ongoing attack by Jones. The evidence also revealed that Gunn is permanently maimed and unable to return to work in the construction industry as a result of the attack. Thus, the evidence provided clearly was sufficient to warrant a finding that this was the worst form of the offense and justify the imposition of the maximum sentence.
 {¶ 25} Appellant argues in his brief that the court erred in not considering mitigating factors eluded to in the psychologist's report contained within the presentence report. Specifically, the brief refers to appellant's history of substance abuse problems and mental health issues. However, in determining whether a maximum sentence is to be imposed, the trial court must look to the statutory factors, enumerated supra, for guidance in determining whether a maximum sentence is warranted.
 {¶ 26} A review of the record reveals that the trial court considered mitigating factors before imposing sentence. Before rendering sentence the court stated:
 {¶ 27} "I have also considered the lengthy, lengthy and complete victim impact statement, together with the criterion for imposing community control sanctions as set forth in Revised Code Sections 2929.15
through 2929.18, the presentence report, recommendations of the Lake County Adult Probation Department, Ms. Amy Kurnick is here on behalf of that department that morning, recommendations of Dr. John Fabian, our Licensed Clinical Psychologist, recommendations of Mr. Levine, Ms. Kowall and I have allowed Mr. Jones to make a statement."
 {¶ 28} The trial court considered the mitigating factors set forth by appellant but found them to lack credibility. The trial court then carefully considered the statutory factors and found the maximum sentence to be warranted. Thus, the trial court did not err in imposing the maximum sentence.
 {¶ 29} Therefore, appellant's assignment of error is without merit, and the decision of the trial court is affirmed.
DONALD R. FORD and DIANE V. GRENDELL, JJ., concur.
[1] State v. Paris (Mar. 23, 1984), 11th Dist. No. 9-272, 1984 Ohio App. LEXIS 9674, at *12.
[2] R.C. 2929.14(A)(1).
[3] R.C. 2929.13(D).
[4] R.C. 2953.08(G)(2)(a).
[5] State v. Perry, 11th Dist. No. 2000-L-166, 2002-Ohio-1468, 2002 Ohio App. LEXIS 1496, at *5, quoting State v. Edmondson (1999),86 Ohio St.3d 324, 329.
[6] Perry, at *5-6, quoting Edmondson, at 328.